IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                  No. 10-CR-0620 JC

FRANCISCO SOLORIO-MONDRAGON,
and TIA SILVEY,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT SILVEY'S MOTION TO SUPPRESS**

THIS MATTER comes before the Court on Defendant Tia Silvey's Motion to Bar Any Introduction of, or Reference to, any Custodial and/or Involuntary Statements of Defendant Tia Silvey, filed April 5, 2010 (Doc. 19)("Motion to Suppress").  Having considered the Motion, the Government's Response (Doc. 26) and held an evidentiary hearing on July 15, 2010, I find the Motion not well-taken and is denied.

**I.**      **Background/Findings**

Defendant Silvey and Co-Defendant Solorio-Mondragon are charged with possession with intent to distribute 50 grams and more of methamphetamine and conspiracy to possess with intent to distribute 50 grams and more of methamphetamine.  *See Indictment* (Doc. 13).  Silvey moved the Court to exclude from trial of this matter statements she made on the day of her arrest.  At the close of the evidentiary hearing, it became clear that there was no factual or legal basis upon which the Court might grant the relief requested and the Motion was denied.  Though it may be unnecessary because there were no factual issues actually contested at the hearing, I now enter this Memorandum Opinion and Order to serve as my essential findings and

conclusions for the record.  *See* Fed.R.Cr.P. 12(d).

On January 29, 2009, Silvey was driving a white Daewoo sedan, New Mexico license plate number KPA 417, when she approached a road block on Interstate 40 at the 12-mile marker.  With her in the vehicle was a passenger now known to be Co-Defendant Solorio-Mondragon.  Silvey pulled up to the roadblock and New Mexico State Police Sergeant Louis Hernandez, a member of the Department since 1998, approached her vehicle.  Hernandez introduced himself, explained the purpose of the DWI checkpoint, and requested Silvey's license, vehicle registration, and proof of insurance.  Silvey could not produce a driver's license, so Hernandez directed her to a secondary inspection area to avoid holding up traffic.  Draft Tr. at 16:1-3.[1]  The secondary area, a well-lit, "wide enough" paved shoulder adjacent to the highway, was located between the check point and the port-of-entry.  Draft Tr. at 10:3-20.  While Silvey drove her vehicle to the inspection area, Hernandez walked with the vehicle.  Hernandez, a Spanish speaker, also made contact with the passenger, who he noted did not speak any English.

New Mexico State Police Officer Troy Velasquez then made contact with Silvey at the secondary inspection area. While inquiring about the status of her driver's license, Velasquez noticed Silvey's eyes were glossy.  Silvey told Velasquez that she did not have a driver's license because her purse had been stolen a few weeks earlier.  Velasquez noticed that Silvey had difficulty locating the requested paperwork and appeared overly nervous. Velasquez detected a strong odor which he described as a mix of air freshener and a fruity scent.  These are signs that, given his training and experience, led him to suspect Silvey was possibly under the influence of alcohol or another intoxicant. Velasquez asked Silvey to step out of the vehicle.  He then asked

---

[1]The citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may have slightly different page and/or line numbers.

Silvey if she had recently consumed any alcohol or drugs.  Silvey initially answered "no."  Finally, Silvey provided the requested paperwork (though not a driver's license) and Velasquez asked her to step out of the vehicle.  She stepped out wearing no shoes and Velasquez asked her to put her shoes on.  Velasquez was in the process of issuing a uniform traffic citation to Silvey for failure to produce a license on demand, having run a check to verify that she had no warrants and verify that she did in fact have a valid driver's license.  Velasquez explained the citation to Silvey.  Silvey chose to admit guilt rather than contest the citation and she signed it.  *See* Govt's Hearing Ex. 1.  While conducting his business with Silvey, Velasquez noticed that she was fumbling and had red eyes.  Velasquez was concerned about her condition, though he did not detect an odor of alcohol or observe any type of nystagmus.  He asked her where she was coming from and she said California.  Silvey told Velasquez something to the effect that the passenger in her vehicle was a friend of a friend of a cousin and she said she could not recall his name.  Velasquez found it odd that she would be traveling a significant distance with someone whose name she did not know.  Also, Silvey was unable to answer Velasquez' questions regarding who owned the vehicle or where she and her passenger were traveling to.  Velasquez wanted to be certain she was in a condition to drive because he was concerned for the safety of Silvey and the innocent motoring public.

At the same time, Officer Hernandez spoke in Spanish to Silvey's passenger.  The passenger told Hernandez that Silvey was his girlfriend ("novia") and Hernandez communicated this information to Velasquez.  After issuing the citation, Velasquez told Silvey she was free to go. As Silvey turned to look back at her vehicle, Velasquez asked her if he could ask her a few more questions and she said "yes."  During the consensual encounter that ensued, Velasquez asked Silvey if she spoke any Spanish and she answered "no."  Silvey said that she thought they

were traveling to Albuquerque but the passenger had told Hernandez that they were going to Farmington.  When asked how she would navigate the vehicle if she did not know where she was driving to, and how she might communicate with the Spanish-speaking passenger for directions, she replied that the passenger was going to give her hand and arm signals.

Velasquez asked Silvey if there were any guns, bombs or weapons in the vehicle and she replied "no."  He then asked about marijuana, cocaine, heroine and methamphetamine and Silvey replied "no."  When Velasquez again asked about methamphetamine Silvey broke eye contact with him and said "no."  Velasquez did not believe her answer and asked again.  Silvey then told Velasquez there was some personal use methamphetamine in the vehicle.  A probable cause search of the vehicle was then conducted and 1.2 pounds of what appeared to be methamphetamine was discovered.  Silvey was then transported to the mobile DWI unit at the road block and no further questions were asked of her by law enforcement at that time.

## II.     Legal Conclusions

On this matrix of operative facts, it is clear that the events as they unfolded *vis-a-vis* Defendant Silvey at the road block at the 12-mile marker on Interstate 40 on January 29, 2009 do not establish a constitutional violation.  As the Government readily identifies in its Response brief, there is no basis in law for Silvey's apparent contention that *Miranda* warnings are required at a sobriety checkpoint or support for the notion that a checkpoint is the functional equivalent of arrest, which appears to be what Silvey asks the Court to conclude in her brief.  (Notably, her counsel argued nothing further at the hearing.)  Instead, "persons temporarily detained pursuant to [traffic] stops are not 'in custody' for the purposes of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *see United States v. Jackson*, 280 F.3d 403 (4th Cir. 2002) (acknowledging distinctions between traffic stops and road blocks but finding them irrelevant for

purposes of *Miranda* requirements).  Nor did the questioning that took place after the citation was issued require that Silvey be read *Miranda* warnings because the encounter was consensual in nature, voluntary, unrelated to the initial purpose of the stop, and Silvey had been informed that she was free to leave prior to responding to any of Velasquez' questions.  *United States v. Villegas*, 554 F.3d 894, 898 (10th Cir. 2009); *United States v. Spence*, 397 F.3d 1280, 1283 (10th Cir. 2005) ([a] consensual encounter is not a seizure for purposes of the Fourth Amendment"); *United States v. Bradford*, 423 F.3d 1149, 1158 (10th Cir. 2005) (absent "further constraining the driver by an overbearing show of authority," what began as a traffic stop can become a consensual encounter after the officer returns the driver's license and paperwork).  For these reasons, and in light of the testimony at the hearing, there was no basis upon which to grant the relief Silvey sought.  Accordingly, the Motion was denied.

    Dated August 12, 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE